## BANK OF COMMERCE *v.* ADAMS COUNTY.

[93 South. 442. In Banc. No. 22830.]

1. TAXATION. *Actual and not fictitious sum of bank's undivided profits, surplus, and accumulations should be reported for assessment.*

   The sum of its undivided profits, surplus, and accumulations which a bank should give in to the tax assessor under the provisions of chapter 193, Laws 1920, is the sum of its actual undivided profits, surplus, and accumulations, and not that carried on its books as such, in event that carried on its books should be fictitious.

2. TAXATION. *Shares in bank should be assessed at true value.*

   Under chapter 193, Laws 1920, the shares into which a bank's capital stock is divided should be assessed at their true value.

APPEAL from circuit court of Adams county.

HON. R. L. CORBAN, Judge.

Petition by the bank of Commerce, filed with the board of supervisors of Adams county, praying that the assessment of its capital stock, etc., be reduced. From an order of the court approving the ruling of the board of supervisors declining the petition, the petitioner appeals. Reversed, and judgment rendered.

*Ernest E. Brown,* for appellant.

Counsel for appellee says appellant contends for the assessment of its capital stock at sixty thousand dollars. Yet, appellant claims and the record shows that the market value of appellant's stock did not exceed sixty thousand dollars, that the true value of its capital stock did exceed sixty thousand dollars, and the actual value of its capital stock did not exceed sixty thousand dollars, or in short the record shows beyond question and without dispute the true value as well as the actual and market value of its capital stock augmented by its surplus and undivided profits did not exceed sixty thousand dollars. The "true

value" in section 112, of Mississippi constitution mean simply actual or market value and so limits the assessment of property.

Chapter 193 of Laws of 1920, has the following proviso: "If the shares of such bank or banking association are of less value than par, they shall be assessed accordingly," indicating clearly an intent to reach the true or actual or market value in assessments of banks' shares of capital stock as augmented by its surplus and undivided profits.

Counsel for appellee seems to contend that only in the event the shares are of less value than par can they be assessed at their actual value, but if worth par or above, there must be added to the par value of the shares, the surplus and undivided profits as shown by the bank's books, and that, too, notwithstanding the book surplus and undivided profits are what cause the market or actual value of the shares to be worth par or above. He further contends that section 181 of Mississippi Constitution, authorizes in assessing banks the adding to the par value of their capital stock their surplus and undivided profits shown by their books. Had said section 191 intended to authorize any such assessment it would have provided in plain and unmistakable language for the assessment of shares of banks at their par value, augmented or increased by their surplus and undivided profits or at their par value plus the surplus and undivided profits shown by their books.

Instead of so doing, it merely authorizes "taxing the shares according to the value (augmented by the accumulations, surplus and unpaid dividends) exclusive of real estate, which shall be taxed as other real estate."

The plain, clear and unmistakable meaning of said section 181 is that the shares of banks as augmented or increased in value by the surplus and accumulations shall be assessed at the value thereof, that is at the actual or market or true value and said section 181 is in harmony with section 112 of Mississippi Constitution which requires property to be assessed at its true value. Near conclusion of his brief, opposing counsel says, on pages 3 and 4: "It fol-

lows, therefore, that if the court sustains the contention of appellant that the bank should have been taxed only on the market value of its stock, less the value of its real estate (a tax on the stockholders, not on the bank), the result will be that the bank, as such will escape all taxation whatever, except on its real estate."

I cannot imagine what counsel means by the above assertion, since there is nothing to justify it. The record shows beyond question that appellant should have been assessed upon its capital stock, surplus and undivided profits at the true, actual and market value thereof, to-wit: sixty thousand dollars less assessed realty of thirteen thousand, six hundred and sixty-nine dollars and fifty-four cents or for forty-six thousand, three hundred and thirty dollars and forty-four cents, and that as it was assessed too high to extent of twenty-six thousand and nine dollars and fifty-six cents and paid taxes thereon, it should recover a refund of two hundred and thirty-four dollars and eight cents from the state and three hundred and twelve dollars and twelve cents from Adams county, total five hundred and forty-six dollars and twenty cents and all costs.

*Wilmer Shields,* for appellee.

The sole question raised in this case and presented to the court for decision by this appeal, is: Should a bank, the market value of its stock being above par, be assessed with the par value of such stock, augmented by its surplus and undivided profits, less the value of its real estate, or should it be assessed only with the market value of its stock, diminished by the value of such real estate? The answer to this question depends upon the construction placed by the court upon section 181, Constitution 1890, and section 1, chapter 193, Laws 1920, amending section 4273, Code 1906.

The language of section 181 of the Constitution, so far as here pertinent, is, "the legislature may provide for the taxation of banks and banking capital, by taxing the

shares according to the value thereof (augmented by the accumulations, surplus and unpaid dividends), exclusive of real estate, which shall be taxed as other real estate."

Appellee takes the position that this language is not esoteric; that it means and was intended to mean precisely what the words employed seem to import; that "value" obviously means par value; that "augmented" means enlarged or increased; and that the assessment complained of was fully authorized by the section of the constitution under consideration.

It is the contention of appellant that the word "value" as used in the paragraph quoted, should be construed to mean "market value" and that the words in parenthesis, "augmented by the accumulations, surplus and unpaid dividends" should be wholly disregarded, or, at any rate, that they should be construed as though the word "as" was prefixed thereto. In other words, appellant is, in effect, asking the court to change by construction the wording of this paragraph of the constitution so as to make it read, "the legislature may provide for the taxation of banks and banking capital by taxing the shares according to the market value thereof, exclusive of the real estate, etc." Is it conceivable that the framers of the constitution, had they intended to say this, would have used the language they did? Can it be supposed that they deliberately resorted to circumlocution and made obscure and doubtful what could have been so easily made clear and certain? Most assuredly not.

The reasons for authorizing assessments of banks to be made in the manner subsequently prescribed by the legislature are not hard to discern. Banks in Mississippi are usually close corporations; their stock, as a rule, is not on the market; sales thereof are infrequent, in nearly all cases privately made, and the price undisclosed. It would be, therefore, except in rare instances, very difficult if not impossible, for the assessor or board of supervisors to successfully controvert the return of the market value of a stock made by a bank for the purpose of assessment.

On the other hand, every bank is required by law to publish at intervals a statement, under oath, of its condition. These statements show the par (not market) value of the capital stock, the surplus, undivided profits, etc., of the bank and are made for the information and guidance of the public and the customers of the bank, who deal and are invited to deal with the bank in reliance thereon. It was therefore provided by the constitution that the legislature might, as it did thirty years ago (section 3764, Code 1892), tax banking corporations on these book values, which could not be juggled with, and appellee insists, banks are absolutely estopped from asserting that such values, published to the world under oath, and upon the strength of which they solicit business, are illusory and fictitious.

It would be wholly contrary to public policy to permit a bank to make one statement of its condition and assets to the public and another to the tax assessor, and so far as counsel for appellee is aware, the right to do so has not heretofore been claimed by any bank in the state. Moreover, shares of stock in a banking corporation, as in other corporations, are the property of the stockholders, not of the bank, and are taxable, primarily, as the property of their respective owners. Such taxation is not a tax on the capital of the bank and may be laid without regard to the fact that part of the assets of the bank may be taxed separately. Logically, such stock should be assessed to its owner, but it is perfectly proper to require the bank to pay the tax in the first instance and look to the stockholders, or the dividends due them, for reimbursement. (See 37 Cyc. 827, IV.)

The latter method, obviously the most convenient and certain for purposes of assessment and collection, is the one authorized by section 181 of the Constitution and section 4273 of the Code of 1906, enacted in conformity therewith; but the tax imposed, while in form a tax on the bank is, manifestly in fact, a tax on the stockholders; the bank being, in so far as it is concerned with the tax on stock, a mere instrument for the collection thereof.

On the other hand, the surplus, undivided profits and other accumulations, if any belong to the bank rather than to its stockholders, and are therefore taxable to the bank (see 37 Cyc, 828, V.)   It follows, therefore, that if the court sustains the contention of appellant that the bank should have been taxed only on the market value of its stock, less the value of its real estate (a tax, on the stockholders, not on the bank), the result will be that the bank, as such, will escape all taxation whatever, except on its real estate.

With the decisions of this court in the several cases cited in the brief of appellant, counsel for appellee has no quarrel, but he is quite unable to perceive what application can be made of them to the case at bar.   Undoubtedly, if this court is satisfied that Code Section 4273, as amended by chapter 193, Laws 1920, is in conflict with section 181 of the constitution, the court will pronounce it void; but appellee most earnestly contends that it is in strict conformity therewith and feels confident that the court will so hold.

As pointed out by this court in the *Magnolia Bank case,* (See 111 Miss. 857) our legislature, in the matter of taxation, has treated banks with peculiar tenderness, and it is with bad grace that appellant comes into court asking for further favor in the premises.   Appellee submits that the judgment appealed from should be affirmed.

SMITH, C. J., delivered the opinion of the court.

The appellant filed a petition with the board of supervisors of Adams county, praying that the assessment for taxation for the year 1921 of its capital stock, surplus, and undivided profits be reduced, which the board declined to do, and it appealed to the court below, where the cause was submitted to the judge for decision without a jury, who after hearing the evidence entered an order approving the ruling of the board of supervisors, from which the appellant appeals to this court.

The petition, all of the allegations of which are supported by uncontradicted evidence, is as follows:

"Your petitioner, Bank of Commerce, avers and alleges it is a banking corporation under the laws of the state of Mississippi, with domicile in Natchez, Miss.; that it has five hundred shares of capital stock of par value of one hundred dollars per share, or total par value of fifty thousand dollars; that, in compliance with the statute so requiring, it gave in to the assessor the amount of its capital stock, surplus, and undivided profits as shown by its books on February 1, 1921, which shows the book value of its capital stock as increased by its surplus and undivided profits to be considerably in excess of the real or market value on February 1, 1921, of its capital stock as increased by the surplus and undivided profits shown on its books; that on February 1, 1921, the fair market value of its capital stock, including the surplus and undivided profits, was only one hundred and twenty dollars per share, or sixty thousand dollars for the entire capital stock, from which should be deducted the thirteen thousand, six hundred and sixty-nine dollars and fifty-six cents assessed against its real estate in Catahoula parish, La., leaving forty-six thousand, three hundred and thirty dollars and forty-four cents to be assessed against its capital stock, surplus, and undivided profits.

"The premises considered, petitioner prays that the assessment against it upon its capital stock, surplus, and undivided profits be reduced to said sum of forty-six thousand, three hundred and thirty dollars and forty-four cents."

Section 4273, Code of 1906 (Hemingway's Code, section 6907), as amended by chapter 193, Laws of 1920, in so far as it provides for the taxation of incorporated banks, is as follows:

"The president, cashier, or other officer having like duties, of each bank or banking association in this state, existing by the laws of this state, shall deliver to the assessor of taxes of the county in which it is located, a written statement, on or before the first day of May of each

year, under oath, of the number and amount of all the shares of its capital stock paid in, . . . and of the sum of all undivided profits or surplus or accumulation of any sort constituting part of the assets of the bank and not including its real estate; and the value of such shares estimated at par and increased by the proportion of the par value of all the shares of stock to the said surplus fund or accumulation, . . . shall be the basis of the taxation of such shares to the bank . . . and the taxes levied on such assessment shall be a first lien on the assets of the bank, but if the shares of such bank or banking association are of less value than par, they shall be valued accordingly."

The contention of the appellee in effect is, and the court below seems to have held, that this statute requires a bank to give in to the tax assessor the sum of its undivided profits, surplus, and accumulations as the same appear on its books, and that it should be then assessed with the sum of its capital stock, undivided profits, surplus, and accumulations as given to the assessor, although the bank's actual undivided profits, surplus, and accumulations may be in fact less than that carried on its books as such, resulting, when such is the case, in the shares of stock being assessed at more than their true value.

Section 112 of our state constitution provides that "property shall be assessed for taxes . . . according to its true value," and section 181 thereof provides that—"The legislature may provide for the taxation of banks and banking capital, by taxing the shares according to the value thereof (augmented by the accumulations, surplus, and unpaid dividends), exclusive of real estate, which shall be taxed as other real estate."

The evident purpose of the latter section of the constitution is to permit the legislature to provide that banks be not taxed on their specific property in which their capital may be invested, but in lieu thereof on the aggregate value of the shares into which their capital stock is divided, in determining which the bank's accumulations, surplus, and

unpaid dividends must be taken into consideration. Construed in this light, the requirement of the statute hereinbefore set out is that the sum of the bank's actual undivided profits, surplus, and accumulations shall be given into the tax assessor, and not necessarily that carried on its books as such. The books of a bank may or may not disclose what its actual undivided profits, surplus, and accumulations are, for it may have failed to charge off uncollectable losses; property owned by it may be worth more or less than the value at which it is being carried on its books, etc. The requirement of the statute is not that fictitious undivided profits, surplus, and accumulations shall be given in for assessment, but such only as constitutes, in the language of the statute, "part of the assets of the bank."

It is the duty of the tax assessor to assess the shares of the bank's capital stock at their true value, and he cannot do this unless he is advised of the amount of the bank's capital stock and of the sum of its actual undivided profits, surplus, and accumulations, if it has such in fact. What the appellant should have done was to have given in the sum of its actual undivided profits, surplus and accumulations and not that which it is carrying on its books as such, but its failure to do so does not deprive it of the right to have its assessment reduced to the proper amount. The only evidence introduced as to the value of the shares into which the appellant's capital stock is divided was that their market value was one hundred and twenty dollars each, making their aggregate sixty thousand dollars, which valuation necessarily includes not only the bank's original capital, but its accumulations. Consequently, in the absence of other evidence, it must control. The appellant pending this appeal paid state and county taxes to the amount of five hundred and forty-six dollars and twenty cents in excess of what it should have paid had the board of supervisors reduced its assessment in accordance with its request so to do.

The true value of the appellant's capital stock, undivided profits, surplus, and accumulations being, according to the evidence, sixty thousand dollars, from which the value of its real estate, amounting to thirteen thousand, six hundred and sixty-nine dollars and fifty-six cents, should be deducted, the judgment of the court below will be reversed, and judgment rendered here, reducing the appellant's assessment on its capital stock, undivided profits, and surplus to forty-six thousand, three hundred and thirty dollars and forty-four cents, and awarding it a recovery of the five hundred and forty-six dollars and twenty cents paid by it as taxes on the excess value of its property pending this appeal, as provided by section 4310, Code of 1906 (section 6944, Hemingway's Code).

*Reversed and judgment here.*

ANDERSON, J., took no part in the decision of this case.

HOLDEN, J. I concur in the result reached by the majority opinion, but I arrive at this conclusion through a different interpretation of the meaning of the act involved.

I think the true interpretation of the legislative mind as expressed in the act is that the banks are required to render their assessment in the manner prescribed, which should be taken by the assessing authorities, not as conclusive of value, but as a basis of taxation only. A different construction of the act, that is to say, that the statement rendered, showing the number and amount of shares and the surplus, undivided profits, and accumulations constituting the assets of the bank, shall be conclusive of the value of the stock, when in fact it was worth more or less than shown thereby, would contravene section 112 of the Constitution, which provides that property shall be assessed at its true value.

I shall set out the pertinent parts of the act because it is necessary to have it before you for close examination in order to better ascertain its meaning and purpose. The act is as follows:

"The president, cashier, or other officer having like duties, of each bank or banking association in this state, existing by the laws of this state, shall deliver to the assessor of taxes of the county in which it is located, a written statement, on or before the first day of May of each year, under oath, of the number and amount of all the shares of its capital stock paid in,   .   .   .   and of the sum of all undivided profits or surplus or accumulation of any sort constituting part of the assets of the bank and not including its real estate; and the value of such shares estimated at par and increased by the proportion of the par value of all the shares of stock to the said surplus fund or accumulation,   .   .   .   shall be the basis of the taxation of such shares to the bank."

The main opinion goes upon the theory, with which I differ, that the bank should, in the first instance, render a statement, showing the actual or true value of the surplus and accumulations, from which valuation the capital stock would be accordingly increased in value. I do not agree with this view, because I believe the act means to require the bank to render the statement, showing the amount of shares of capital stock and the sum or aggregate of all surplus and accumulation, not including real estate, thus showing the value of the shares as increased by the surplus or accumulation; and the statement shall be the basis of the taxation against the bank. The amount of all the items thus shown is not to be considered a conclusive fixation of the value of the property, but it is a basis of valuation, and the true value may be shown, and, when ascertained, it shall govern as the value for taxation.

In an effort to make my view understood I will put it in this way: The purpose of the law is to say to the bank, you must render your statement to the assessor, showing the number and amount of the shares of capital stock, and of the sum or aggregate of all undivided profits, surplus, or accumulations constituting part of the assets of the bank, not including real estate; and the value of such shares shall be increased in proportion to said surplus and

accumulation, which, increased value of the shares shall be the basis for the taxation of the bank. That is, that the bank is required to uncover and state what it claims and its books show as the shares of capital stock, undivided profits, surplus, or accumulation of any sort which are part of the assets of the bank. When this is done the value of the shares of stock will appear according to the increased value on account of such surplus and accumulation. This valuation for assessment, however, is not conclusive of the actual or true value of the shares of capital stock, but the true value may be shown by the bank the same as any other taxpayer may show the true value of his property for taxation.

But the act intends that the bank must file the required statement, which shows its hand and discloses all of its property assets, which can only be ascertained from its books. If the view I entertain is not correct, then it seems to me that the act is phrased in useless language, requiring the detailed statement of the aggregate items composing the assets of the bank, when a statement merely of the value of the stock would meet the view of the main opinion.

If the bank is permitted under this act to render a statement placing its own valuation upon the different items required to be stated, regardless of what its books show, then it would be afforded opportunity to conceal its assets as shown by the books, and thus defeat what I think was plainly intended otherwise.

I have discussed the difference in our views because I think the manner of rendering the statement as prescribed by the act is really important to both the state and the banks.

COOK, J., joins in this concurring opinion.