BOARD OF SUP'RS OF QUITMAN COUNTY *et al. v.* RIVERSIDE BANK.

(Division B. November 17, 1930.)

[131 So. 80. No. 28845.]

654

Gore & Gore, **A. A. Pogue** and **W. M. Donaldson,** all of Marks, for appellants.

**Wm. Donaldson,** of Marks, for appellant.

**Boone & Lowrey,** of Marks, for appellee.

Argued orally by **M. P. Lowrey**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

This is an appeal from an assessment by the board of supervisors of the county and by the town of Marks of the Riverside Bank for the year 1929. In 1928 the bank had been assessed on its real estate at thirty-two thousand seven hundred seventy dollars, which assessment of real estate was in force for the years 1928 and 1929. The real estate listed by the bank in rendering its statement for the year 1928 was listed as being valued at ninety thousand five hundred forty-seven dollars and twelve cents, being the book value of the real estate and representing the amount the bank had invested in real estate. The capital stock of the bank for 1929, as shown by the statement, was fifty thousand dollars, with surplus of twelve thousand five hundred dollars, and the board of supervisors and the town of Marks undertook to deduct from the total value of sixty-two thousand five hundred dollars the assessed value of land as shown by the assessment roll of 1928 and make a personal assessment against the bank for the year 1929 at the difference of its capital stock and surplus and the real estate assessed against it, which assessment amounted to twenty-nine thousand nine hundred twenty dollars. The bank appeared and protested against being assessed with anything on its capital stock and surplus, for the reason that the statement of its real estate filed with the board of supervisors and the town of Marks shows that the value of real estate exceeded the value of the capital stock and surplus. The board of supervisors overruled said protest and made the assessment, as above stated, from

which the bank appealed to the circuit court, which court heard the matter on appeal and sustained the contention of the bank, adjudging that it was not liable on its capital stock for anything because the value of the real estate exceeded the value of the capital stock and surplus.

The statement filed by the bank with the board of supervisors showed:

Loans and discounts ......................$175,170.24
Overdrafts, secured ........................  259.28
Overdrafts, unsecured ......................  416.20
U. S. Bonds, Certificates, etc. ..............
Stocks, Bonds, Securities, etc. ............ 125,376.99
Guaranty fund with State Treasurer ........   1,000.00
Banking house and lot ....................   6,162.16
Furniture and fixtures ....................   1,767.78
Due from other Banks—all Funds ..........  29,263.27
Exchanges and checks for clearance ........   2,532.31
Other cash items ..........................   65.00
Currency and Coins ......................  10,679.96
                                          _____
Total ..................................$352,693.19

The listed liabilities of the statement were:

Capital Stock ............................$ 50,000.00
Surplus Fund ............................  12,500.00
Dividends ..............................   3,000.00
Individual deposits subject to check ........ 220,765.24
Savings deposit ..........................   8,942.08
Time certificates of deposit ..............  44,894.92
Cashier's checks ..........................   7,276.70
Reserved for accrued interest on dep. ......   1,005.81
Reserved for accrued taxes ..............   4,308.44
                                          _____
Total ..................................$352,693.19

Under statement of book value of real estate as per exhibit A ninety thousand five hundred forty-seven dol-

lars and twelve cents; value of real estate carried on the books, ninety thousand five hundred forty-seven dollars and twelve cents; actual value or market value, ———. Value of furniture and fixtures carried on the books, one thousand seven hundred sixty-seven dollars and seventy-eight cents; actual or market value, three thousand one hundred sixty-five dollars and seventy-six cents. Attached to this statement, as an exhibit, is a description of the governmental subdivisions and town lots of the several pieces of real estate with a separate value of each piece, making up the total of the value as above stated. It appeared that these lands, other than the banking house and lot, had been acquired prior to 1924 and had been held by the bank for more than five years prior to the assessment of 1928. It also appeared that the bank had entered into contracts with various parties contracting and selling under conditional sales all of the said lands, taking promissory notes for the principal in the face of the notes and interest notes upon the several principal notes, in which contract it was agreed that the bank would convey the land in fee simple on payment of certain amounts specified in the contract; and it was also provided that a trustee be named, and that, if purchaser of land made default, the trustee, on request of the bank, would foreclose and sell whatever interest the purchaser acquired under the contract. These contracts were placed of record, and the notes were carried on the books of the bank as assets of the bank.

It was contended by the county and the town of Marks in the court below, the two causes being consolidated and tried together, that under section 3844, Hemingway's 1927 Code, section 3804, Code 1930, the bank was not the owner of the said lands, having sold them as above stated, and also that, under the above-named section of the code, the bank was not entitled to deduct from its capital stock assessment lands held in violation of the statute. The statute reads as follows: "Any corporation doing a bank-

ing business in this state may purchase, hold and convey real estate for the following purposes and no others: (1) Such real estate as shall be held necessary in which to transact the business of any such bank, including with its banking offices, other premises in the same building to rent as a source of income, but shall not exceed in cost to such bank thirty per cent of its paid in capital, surplus and undivided profits; provided that banks in cities of more than six thousand population may invest not more than fifty per cent, by and with the consent of the superintendent of banks. (2) Such real estate as shall be purchased by or conveyed to such bank in satisfaction of or on account of debts previously contracted in the course of its business. (3) Such real estate as it shall purchase at sale under judgments, decrees or mortgages, or deed of trust, foreclosure under securities held by it or under any security or lien which is a superior lien to that held by said bank.

"Any real estate heretofore acquired for any other purpose than as specified in subdivision '1' of this section in any manner or form shall be sold within five years from the time this act takes effect, and any real estate acquired as provided in said subdivisions '2' and '3' after this act takes effect shall be sold within five years after the title thereto is acquired. If any such real estate is not sold within the time herein limited, it shall not thereafter be carried as an asset of the bank."

Section 8203 of Hemingway's 1927 Code, section 3138, Code 1930, provides how banks are taxed, and provides, among other things: "And not including its real estate." And section 8206 of Hemingway's 1927 Code, provides that: "Real estate of a bank or banking association shall be assessed and pay taxes—state, county, and municipal—according to its value, as other real estate."

In Bank of Tupelo v. Board of Supervisors of Lee county, 155 Miss. 436, 124 So. 482, it was held that the true value of bank real estate must be deducted from ag-

gregate true value of assets in determining true value of capital stock for taxation. Under this opinion, the contention that the value of the real estate as fixed by the assessment roll of 1928 would control the amount to be deducted from the bank's assessment in 1929 in making its personal assessment cannot prevail. In that case no question was involved of real estate being sold under conditions stated in this opinion. In other words, in that opinion the assessment of both real and personal property was being made for the same year. The bank is entitled to deduct the true value of its real estate from the true value of all its assets, and the value fixed in 1928 is not conclusive for the year 1929. The holding of the opinion in the above case is stated in the syllabus as follows: "Under Constitution, section 112, requiring all property to be assessed for taxation according to its true value, and section 181 (Constitution), authorizing legislature to provide for taxation of banks and banking capital, the true value of bank real estate must be deducted from aggregate true value of all its assets in determining, for purposes of taxation, the true value of bank's capital stock, in accordance with Laws 1920, chapter 193, section 1." In the opinion of the majority in that case, at page 440 of the Mississippi Report, 124 So. 482, 483, the court says: "The true value of the bank's capital stock, surplus, and undivided profits is the aggregate true value of all of its assets, in which of course, its real estate is included; from which it necessarily follows that, in determining the true value of a bank's capital stock, surplus, and undivided profits, exclusive of its real estate, the true value of its real estate must be deducted from the aggregate true value of all its assets."

It appears, therefore, from this decision that the true value of the land is not deducted from the capital stock and surplus as such, as seemed to be the view held by the court below, but that its true value is deducted from the true value of all the assets.

In the present case the bank, we think, had sold the lands, and, regardless of how the lands were assessed in 1928, the lands were, for purposes of taxation, the property of the purchaser, and the bank was the owner of the notes and contract which were property of value. The effect of section 3844, Hemingway's 1927 Code, section 3804, Code of 1930, was to prohibit banks from holding real estate, being unliquid capital, for a longer period than five years, and as the bank had acquired the lands here involved more than five years before the assessment and had, in order to comply with section 3844, Hemingway's 1927 Code, section 3804, Code of 1930, sold the lands as above stated, its only interest in the title held by it was to secure the debt in favor of the bank, evidenced by the notes and contract. These notes and contract were assets of the bank and were, of course, personal property. The bank cannot be permitted to take the benefit of this transaction carrying the notes and contract as personal property and avoid having its real estate charged off as assets of the bank for the purposes of bank control, and at the same time use the lands to defend a just and fair assessment of its personal property by the state, county, and municipality. Therefore, in 1929, the bank was not the owner of the land for purposes of taxation, but was taxable upon its capital stock and surplus, which value is made up from a consideration of all its assets, in this case including the notes and contract rather than the land itself.

It is not necessary in this opinion to decide the question presented as to whether the effect of section 3844, Hemingway's 1927 Code, section 3804, Code of 1930, would be to prohibit the bank from deducting real estate held by it for a longer period than five years, permitted by the statute; and it is not necessary to now determine what effect the statute would have upon such assessment, except we are persuaded that the transaction here in

making the sale of the lands as above stated was for the purpose of complying with the statute and not for the purpose of a mere evasion of the statute in order to get the benefits of the notes before the banking department and get the benefit of land deducted on its assessment for taxes. We prefer to construe' the transaction by the bank in selling its real estate to be a bona-fide compliance with the requirements of section 3844, Hemingway's 1927 Code, section 3804, Code of 1930.

It follows from what we have said that the judgment of the court below must be reversed, and the cause remanded for a new trial in accordance with the views herein announced.

Reversed and remanded.